W. H. Ferguson, Sr., and Myrtle D. Ferguson, et al. [1] v. Commissioner. Ferguson v. Commissioner
Docket Nos. 91158, 91159, 91160, 91161.
United States Tax Court
T.C. Memo 1962-298; 1962 Tax Ct. Memo LEXIS 11; 21 T.C.M. (CCH) 1587; T.C.M. (RIA) 62298; December 19, 1962
*11 Held: That losses of petitioners from sale of rough timber to James River Lumber Company, Inc., were between an individual and a corporation more than 50 percent in value of the outstanding stock of which was owned, directly or indirectly, by or for such individual, within the meaning of sec. 267(a)(1), (b)(2) and (c)(2) and (4), and no deductions for such losses are allowable. F. Elmore Butler, Esq., 1300 Trevelers Bldg., Richmond, Va., for the petitioners. Charles C. Shaw, Jr., Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined deficiencies in income tax against petitioners in the respective amounts and for the *12 respective years as follows: Docket No.
Petitioner
Year
Deficiency
91158
W. H. Ferguson, Sr.,
and Myrtle D.
Ferguson
1956
$ 694.12
91159
John T. Ferguson
and Julia Meade
1956
320.44
Ferguson
1957
118.55
91160
Richard H. Ferguson
1956
596.53
91161
W. H. Ferguson, Jr.,
and Selma K.
Ferguson
1956
1,301.52
Some of the adjustments are uncontested. The disputed issue is whether or not losses of petitioners from the sale of rough timber to James River Lumber Company, Inc., were between an individual and a corporation more than 50 percent in value of the stock of which was owned, directly or indirectly, by or for such individual, within the meaning of section 267 of the Internal Revenue Code of 1954, and whether said losses were properly disallowed by respondent. Findings of Fact Some of the facts are stipulated and incorporated herein by reference. Petitioners W. H. Ferguson, Sr., and Myrtle D. Ferguson are husband and wife and reside at RFD #5, Richmond, Virginia. Petitioner Richard H. Ferguson resides at 2308 East Grace Street, Richmond, Virginia. Petitioners W. H. Ferguson, Jr., and Selma K. Ferguson *13 are husband and wife and reside at Blount Point Road, Newport News, Virginia. Petitioners John T. Ferguson and Julia Meade Ferguson are husband and wife and reside at Route 5, Box 242-F, Malvern Hill Farm, Richmond, Virginia. All of the above-named petitioners filed their respective Federal income tax returns for the taxable years involved with the district director of internal revenue for the district of Virginia. Petitioners Myrtle D. Ferguson, Julia Meade Ferguson and Selma K. Ferguson are parties only by reason of having filed joint returns. Hereafter petitioners W. H. Ferguson, Sr., John T. Ferguson, Richard H. Ferguson and W. H. Ferguson, Jr., will be referred to collectively as the "petitioners." All petitioners prepared their income tax returns on a calendar year basis using a cash method of accounting. Petitioner W. H. Ferguson, Sr., is the father of petitioners John T. Ferguson, Richard H. Ferguson and W. H. Ferguson, Jr. On April 4, 1955, petitioners acquired the timber rights in a certain tract of land in Powhatan County, Virginia, known as the "Indian Camp Property." As a matter of convenience and by mutual understanding, title to the timber rights was placed in *14 the name of W. H. Ferguson, Sr. The interests of the petitioners in the joint venture for the "Indian Camp Property" were as follows: W. H. Ferguson, Sr.
- 2/5
W. H. Ferguson, Jr.
- 1/5
John T. Ferguson
- 1/5
Richard H. Ferguson
- 1/5
The James River Lumber Company, Inc., (hereinafter referred to as James River) is a corporation organized and chartered under the laws of the State of Virginia with its principal place of business located on Westwood Avenue, Richmond, Virginia. James River has only one class of stock outstanding, namely common stock. All of the outstanding shares of common stock in James River during 1956 and 1957 were owned by the following persons: Name
No. Shares
W. H. Ferguson, Sr.
527
W. H. Ferguson, Jr.
307
John T. Ferguson
100
Richard H. Ferguson
40
Julia Meade Ferguson
60
Dorothy Deane Ferguson
10
During the years 1956 and 1957, James River was engaged primarily in the business of purchasing rough lumber, processing it in its finishing plant into finished materials, and selling the finished materials to customers. The petitioners made arrangements with George Hatcher, James H. Jones, E. Starr to cut *15 and saw the timber on the Indian Camp Property and haul same as rough lumber to lumberyards. Hatcher, Jones and Starr were independent contractors and were compensated on the basis of the amount of rough lumber delivered to the lumberyards. Hatcher, Jones, and Starr are not related to any of the petitioners, and they have no interest in James River or any other corporation controlled by the petitioners. The petitioners agreed to sell to James River the rough pine lumber cut from the Indian Camp Property. The terms of this agreement required that the rough pine lumber be delivered to the yard of James River, and it was agreed that the purchase price would be the prevailing delivered market price. James River did not agree to purchase any rough hardwood lumber from the petitioners. The timber was cut from the Indian Camp Property during the years 1955, 1956 and 1957. During those years James River purchased from the petitioners pine lumber for a total price of $51,040.09. During this same period the petitioners sold the hardwood lumber to companies other than James River for a total price of $3,588.58. Neither the petitioners nor James River had any interest in said other companies. *16 The gross proceeds received by the petitioners from the timber operation on the Indian Camp Property were a total of $54,628.67, including the $51,040.09 received from James River and the $3,588.58 received from other lumber companies. The costs incurred and paid by the petitioners on account of the Indian Camp Property operations were as follows: Cost of timber rights
$34,000.00
Cutting timber and extra
supervision
16,755.73
Sawing timber
7,290.00
Delivery
3,240.00
Miscellaneous
87.51
Total
$61,373.24
As the costs incurred and paid by the petitioners were $61,373.24 and the gross proceeds were $54,628.67, the total loss sustained by them was $6,744.57. This loss, based on the petitioners' percentages in the joint venture, was incurred in the years 1956 and 1957 in the following amounts: 1956
1957
W. H. Ferguson, Sr.
$1,707.62
$1,012.39
W. H. Ferguson, Jr.
853.81
506.19
Richard H. Ferguson
819.00
485.56
John T. Ferguson
853.81
506.19
Of the total loss of $6,744.57, the respondent disallowed as a deduction $6,312.92 which is the pro rata portion of the loss which the respondent determined to be allocable to the sales *17 to James River and was arrived at by multiplying the ratio of the gross proceeds from James River to the gross proceeds from all sources times the loss of $6,744.57. The sales of timber cut from the Indian Camp Property to James River were at prevailing market prices. Opinion Petitioners, on brief, make the following statement: STATEMENT OF THE NATURE OF THE CONTROVERSY The pleadings which have been filed in these cases and the stipulation of facts dispose of all disputes between the parties other than that relating to the proper treatment to be accorded a certain item in the gross amount of $6,312.92. This represents the portion of a loss sustained by petitioners which the respondent proposes to disallow as a deduction under the terms of Section 267 of the Internal Revenue Code of 1954. The fact that the loss was sustained and the amount of the loss is not in dispute. Petitioners do not appear to question the fact that the transaction here involved was between an individual and a corporation (James River Lumber Company, Inc.) more than 50 percent in value of the outstanding stock of which was owned directly or indirectly, by or for such individual, *18 within the meaning of section 267(b)(2) of the Code. [2] In any event, the stipulation of facts clearly demonstrates this. *19 As stated above, petitioners concede the loss and the amount thereof. They also appear to agree that the transaction with James River Lumber Company, Inc., was a sale. This, again, is in any event clear from the stipulation of facts. What petitioners appear to argue is that the sale was not the kind of a sale that was contemplated by section 267; that section 267 should be limited to sales in the nature of capital transactions; and that the loss resulting from the sale here involved was in the nature of an operating loss. We find no support for this view in the statute. No such limitation is therein contained, and there is no reason or basis to infer such a construction. The obvious purpose of the statute is to disallow all losses (other than distributions in corporate liquidations) from sales of property between related persons as defined in the statute. Petitioners' construction would be in the very teeth of the purpose of the statute. In the light of the foregoing, we sustain respondent's disallowance of the loss in question. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: John T. Ferguson and Julia Meade Ferguson, Docket No. 91159; Richard H. Ferguson, Docket No. 91160, and W. H. Ferguson, Jr., and Selma K. Ferguson, Docket No. 91161.↩
2. SEC. 267. LOSSES, EXPENSES, AND INTEREST WITH RESPECT TO TRANSACTIONS BETWEEN RELATED TAXPAYERS. (a) Deductions Disallowed. - No deduction shall be allowed - (1) Losses. - In respect of losses from sales or exchange of property (other than losses in cases of distributions in corporate liquidations), directly or indirectly, between persons specified within any one of the paragraphs of subsection (b). * * *
(b) Relationships. - The persons referred to in subsection (a) are: * * *
(2) An individual and a corporation more than 50 percent in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual; * * *
(c) Constructive Ownership of Stock. - For purposes of determining, in applying subsection (b), the ownership of stock - * * *
(2) An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family; * * *
(4) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; and * * *↩